UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
TIHISI WILLIAMS,                    )
                                    )
    Petitioner,                     )
v.                                  )     Civil Action No. 03-12554-RWZ
                                    )
LINDA BARTEE,                       )
                                    )
    Respondent.                     )
_____ )

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION
TO THE PETITION FOR HABEAS CORPUS**

    Respondent Linda Bartee submits this memorandum of law in opposition to the petition for habeas corpus filed by petitioner Tihisi Williams. The petition should be denied because Mr. Williams has failed to demonstrate that the state courts' adjudication of his claims resulted in a decision that was contrary to clearly established federal law as determined by the United States Supreme Court, or was based upon an unreasonable determination of the facts in light of the evidence presented to those courts. More fundamentally, however, the petition should be denied because it fails to allege, much less demonstrate, that the conviction itself violates federal law.

**I.    The State Court Adjudication**

    On June 23, 1998, a Suffolk County grand jury indicted Petitioner for the first degree murder of Marco Charles, in violation of M.G.L. c. 265, § 1, and for separate counts of assault with a dangerous weapon on Shawn Jones and Dion Hughes, in violation of M.G.L. c. 265, § 15B. Supplemental Appendix at Tab E, p. A2-A5 [hereinafter "Supp. App. at ___:___"]. The indictment was tried to a Suffolk County Superior Court jury, before Justice James McDaniel, beginning April 26, 2000. Supp. App. at E:A4. On May 1, 2000, the jury acquitted Petitioner on the murder charge and convicted him on the two assault charges. *Id*. Immediately thereafter, the court sentenced

Petitioner to consecutive three to five year terms of imprisonment on the two convictions. Supp. App. at E:A4-A5.

Petitioner timely appealed the conviction regarding the assault on Dion Hughes[1] to the Massachusetts Appeals Court, raising three points: 1) that the Commonwealth failed to prove that Dion Hughes was actually in fear when Petitioner pointed a gun at him and, therefore, that there was insufficient evidence to support the assault conviction; 2) that the court erred in instructing the jury on a theory of assault by means of attempted battery, because there was insufficient evidence for such a charge, and 3) that the court improperly instructed the jury regarding assault with a dangerous weapon. Supp. App. at E:6-17. The Appeals Court affirmed in all respects on October 4, 2002. Supp. App. at H.

Petitioner then sought further appellate review in the Supreme Judicial Court on three points: 1) that the Appeals Court violated Due Process by affirming the judgment on a theory not presented to the trial court; 2) that the Appeals Court misapplied the law of assault by failing to require a showing that the victim of an assault was actually in fear of immediate battery; and 3) that the Appeals Court misapplied the law regarding what constitutes an overt act for purposes of assault by attempted battery. Supp. App. at B:1-10. The S.J.C. denied the application on December 5, 2002. Supp. App. at A:1.

---

[1] Petitioner does not appear to have appealed the conviction regarding the assault on Shawn Jones, Supp. App. at E:18, and does not challenge that conviction in this proceeding.

**II.    The Factual Findings**

The findings of the state courts are presumptively correct. 28 U.S.C. § 2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000). This presumption of correctness applies to facts found both by the state trial and appellate courts. *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002). The presumptive correctness of state court factual determinations may only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Petitioner's assault of Hughes and Jones took place in the midst of a larger confrontation between groups of their associates, which resulted in the stabbing death of one of Jones's friends, Marco Charles. *See generally*, Supp. App. at E:2-5; F:3-7. The stabbing incident grew out of an earlier fight. *Id*. On September 30, 1997, Dion Hughes, seventeen, was watching his friend–eighteen-year-old Shawn Jones–play football at a field in Roslindale. Tr. II:92-93; III:58-59. Jones was playing against a group of older men that included Terrence "Tex" Texeira. *Id*. During the game, Texeira became angry and tried to choke one of Jones's friends, starting a fight, during which Texeira's group was "beat . . . down," by Jones's group. Tr. III:173-74.

About week later, on October 5, Jones and Hughes were at an Archdale basketball court with a group that included two other boys–Marco Charles and Sherrod Jones, when five armed men appeared from a wooden area adjacent to the court. Tr. II:72-81. The group included: Texeira, armed with a knife; "Marco," another man from the football game, whose full identity remains unknown, and who was armed with a stick; Sammy Rodriguez and Derrick Farris, both armed with knives; and Petitioner, Tihisi Williams, who was armed with a gun. *Id*.; II:85; III:43. Petitioner,

with the gun at his side, and accompanied by Texeira and "Marco," approached Hughes and Shawn Jones, while the rest of Jones's group scattered. Tr. II:80-86. Sammy Rodriguez chased and eventually stabbed Marco Charles. Tr. II: 85-88, 91-92; Tr. III:170-71, 270-75.

Against this background, the Appeals Court made the following factual findings about Petitioner's confrontation with Jones and Hughes:

> The jury were justified in finding that Hughes had intentionally been put in reasonable apprehension of an immediate battery. The defendant had pushed Hughes back onto the bench and said "you all move again, I'm going to blast you all" and proceeded to point his gun at Hughes. Hughes's apprehension was demonstrated by the fact that while every one else in his group was able to run away, he and Jones remained on the bench where they were held at gunpoint. . . .
>
> . . . .
>
> . . . . The jury could have found that the defendant had been instructed by one of his group to shoot Hughes and Jones in retaliation for a previous beating suffered at their hands. The defendant, who had cocked his gun, first pointed the gun at Hughes, then at Jones, then between the two of them. The victims could hear it "click back." The defendant taunted and verbally abused the two saying "you all niggers is cowards, faggots, stuff like that." This confrontation was very quickly interrupted, however, when another of his group came running up the street and told the defendant that he had stabbed someone. The defendant and his friends quickly ran away without harming Hughes or Jones.
>
> . . . .
>
> . . . . The defendant's friend had urged him to shoot the victims in retaliation for a previous incident. The defendant cocked his pistol and aimed it at the victims; the jury were entitled to believe that the completion of the crime was interrupted only because a group member urged immediate escape.

Supp. App. at H:2-5 (internal citations omitted).

**III.   The Appeals Court Decision Was Neither Contrary to Clearly Established Federal Law, as Determined by the United States Supreme Court, Nor Based On An Unreasonable Determination Of The Facts In Light Of The Evidence Presented In The State Court Proceeding.**

The instant petition raises two grounds for relief.  Ground 1 argues that the Appeals Court's decision that there was sufficient evidence to convict Petitioner of assault with a dangerous weapon on an attempted battery theory was contrary to *Dunn v. United States*, 442 U.S. 100 (1979). Ground 2 claims that the Appeals Court decision holding that there was sufficient evidence to support the verdict on an attempted battery theory was based upon an unreasonable determination of the facts, in light of the evidence presented in the state court.

Both claims fail.  The Appeals Court decision was not "contrary to" *Dunn*, as that phrase has been interpreted by the Supreme Court, and there was evidence in the state court record to support each of the Appeals Court's findings.  Even if these arguments were sound, however, Petitioner would not be entitled to relief, since he does not dispute that there was sufficient evidence to convict him of assault on a threatened battery theory.  Sufficient evidence on one theory of liability is enough, under federal law, to support a general verdict, even where the evidence as to an alternative theory is insufficient.

   *A.   Standard of Review*

Habeas corpus review of claims previously adjudicated by state courts is both limited and highly deferential:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State Court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This "highly deferential standard for evaluating state-court rulings" reflects the overarching structure of the federal habeas corpus scheme, which vests "primary responsibility" for evaluating federal law claims raised in criminal trials in the state courts, courts which must be presumed in habeas corpus courts to know and follow the law. *Woodford v. Visciotti*, 537 U.S.19, 26-27 (2002) (per curiam). Thus, as the Supreme Court has repeatedly emphasized, it is not sufficient to warrant habeas corpus relief that the state court's decision was erroneous or incorrect. *Id*. at 27; *Williams v. Taylor*, 529 U.S. 362, 412 (2000). It is not even sufficient that the state court "failed to apply" Federal law clearly established by the Supreme Court, *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam), or that the state court committed "clear error," or that the reviewing court is of the "firm conviction" that the state court's ruling was erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

Rather, federal courts must decline to intervene to disturb state court judgments unless petitioner demonstrates that his claim falls into one of the narrowly drawn categories set forth in the statute. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently from [the Supreme] Court on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 412-13. This "contrary to" analysis is distinct from that under the "unreasonable application" clause. *Id*. at 413. The clearly established law that is

relevant to the § 2254(d)(1) analysis is limited to the holdings of United States Supreme Court cases extant at the time of the state court decision, and does not include the dicta of such cases. *Id*. at 412.

Surpassing even the substantial deference habeas courts pay state court determinations of federal questions, is that accorded decisions regarding state law, which are completely unreviewable in habeas corpus, as the Supreme Court has repeatedly held:

> We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Factual determinations of state courts are granted similar deference. Review of the reasonableness of state court factual determinations under § 2254(d)(2) is limited exclusively to determinations of basic, primary, or historical facts, while inferences, characterizations of the facts, or mixed questions of fact and law are not reviewable under subsection (d)(2). *Trigones v. Bissonnette*, 296 F.3d 1, 6 n.4 (1st Cir. 2002); *Dolinger v. Hall*, 302 F.3d 6, 8 n.5 (1st Cir. 2002). To satisfy § 2254(d)(2), moreover, a petitioner must show that the state's factual determination was objectively unreasonable. *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 399 (2000)). Objective unreasonableness is not merely an incorrect or erroneous decision. *Williams*, 529 U.S. at 410.; *see also Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003) ("petitioner's challenge to a decision based on a factual determination will not succeed if the petitioner merely evidences that the state court committed error. Instead, he must further establish that the state court committed unreasonable error."); *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003) ("federal habeas court may not grant habeas relief under § 2254(d)(2) merely

because it disagrees with a state trial court's factual determination").

Further, § 2254(d)(2)

> cannot be read in a vacuum; [it] must be interpreted in conjunction with a companion subsection specifying that "a determination of a factual issue made by a State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

*Sanna v. DiPaolo*, 265 F.3d 1, 7 (quoting 28 U.S.C. § 2254(e)(1)). *See also Miller-El,* 537 U.S. at 341 (noting that to prevail under § 2254(d)(2), habeas petitioner must both disprove the factual finding by clear and convincing evidence and demonstrate that the court's factual determination was objectively unreasonable).

> **B.  *The Appeals Court Decision Did Not Announce A Conclusion Of Law Opposite To That Clearly Established By* Dunn, *And The Facts Of This Case Are Not Materially Indistinguishable From* Dunn.**

Petitioner first argues that the Appeals Court decision was contrary to *Dunn v. United States*, 442 U.S. 100 (1979). In *Dunn*, appellant had been charged with making false statements, a crime that could be proved by a showing that the defendant made materially inconsistent statements while under oath in court proceedings, or in proceedings "ancillary to" court proceedings. *Id*. at 102-04. Specifically, the Government charged in the indictment that Dunn had recanted earlier grand jury testimony in a sworn, out-of-court statement before a notary public. *Id*. at 103. The Court of Appeals held that a conviction on this basis was improper, since the out-of-court statement was not "ancillary to" a court proceeding, as the statute required; the appeals court nevertheless affirmed the conviction on the basis that Dunn had later adopted the statement in a hearing that was a covered proceeding under the law. *Id*. at 104-05.

The Supreme Court reversed, agreeing that the out-of-court statements were not covered by the statute, and holding that because the only crime charged in the indictment was related to the out-of-court statements, the later in-court testimony adopting those statements could not serve as a basis for conviction without violating due process. *Id*. at 105-113. Thus, the rule of *Dunn* is that, when an appellate court finds that the original basis upon which a conviction was entered is legally insufficient, the court may not look to uncharged conduct that would have constituted a crime (if charged) as a basis for conviction: "To uphold a conviction on a charge that was neither alleged in an indictment nor presented to a jury at trial offends the most basic notions of due process." *Id*. at 106.

The instant case resembles *Dunn* only in that the Appeals Court discussed two alternate bases for affirming the conviction. As the court held, an assault under Massachusetts law "may be accomplished in one of two ways–either by an attempted battery, or by putting another in fear of an immediately threatened battery." *Commonwealth v. Gorassi*, 733 N.E.2d 106, 109 (Mass. 2000). "Thus, an assault is . . . either an attempt to use physical force on another, or . . . a threat of use of physical force." *Id*. at 110. The theories of assault have distinct, but not mutually exclusive, elements: "In the case of an attempted battery type of assault, although the Commonwealth must prove that the defendant attempted to do bodily harm, there is no requirement that the victim be aware of the attempt or be put in fear by it," while "[i]n the case of a threatened battery type of assault, the Commonwealth must prove that the defendant engaged in 'objectively menacing' conduct with the intent to put the victim in fear of immediate bodily harm." *Id*. (internal citations omitted).

Petitioner's claim is that the Appeals Court improperly upheld the assault conviction on an attempted battery theory, when there was no evidence to support the theory and it was not tried to the jury. But this claim, even if it were correct, is insufficient to implicate *Dunn*. The Appeals Court did not claim that it was free to affirm the conviction on an attempted battery theory, despite some defect in the threatened battery theory. Rather, the court held that both theories were tried and submitted to the jury, that both were legally permissible and both were supported by the evidence. Petitioner does not dispute (at least for the purposes of this petition) that there was sufficient evidence to convict him of an assault on a threatened battery theory, *see* Petitioner's Memorandum of Law [hereinafter "Pet. Mem."] at p. 7, the theory he contends the case was actually tried and submitted to the jury on. *Dunn* does not stand for the proposition that a valid basis for conviction that was actually charged and tried to the jury is invalidated merely because an appellate court erroneously finds an alternate basis for the conviction *in addition* to the concededly proper theory. *Dunn* itself makes this clear, noting that the conviction at issue there must be reversed *unless* the originally charged out-of-court interview was a proceeding covered by the false statements statute. *Dunn*, 442 U.S. at 107. *Dunn* simply cannot be read as broadly as Petitioner contends. As the Supreme Court has explicitly held, due process does not require that all theories upon which the jury is instructed be supported by the evidence, only that one sufficient ground for conviction exist. *Griffin v. United States*, 502 U.S. 46, 57-61 (1991).

Nor, for this reason, is the instant case based upon materially indistinguishable facts from those at issue in *Dunn*. The fact that the Appeals Court found that the theory upon which Petitioner contends the case was actually tried to the jury is supported by the evidence distinguishes this case from *Dunn* on a fundamental level. Neither in *Dunn* nor in any of the other cases cited by Petitioner

did the appellate court uphold the conviction on the basis it was originally tried. *See Cole v. Arkansas*, 333 U.S. 196, 200-02 (1948) (although case was charged and tried under § 2 of statute, Alabama Supreme Court specifically disclaimed reliance on that portion of the statute, which was constitutionally suspect, and instead upheld the conviction upon a determination that conduct violated § 1, a crime that was not charged in the indictment); *Cola v. Reardon*, 787 F.2d 681, 688 & n.5 (1986) (federal court bound by state court's own determination that original charge was "faulty" because conduct was not criminal under state law); *Gomes v. United States*, 969 F.2d 1290, 1294-95 (1992) (holding that evidence was insufficient to support conviction on theory originally presented to jury). This case is also distinguishable from *Dunn* on the two other determinative factors at issue in that case. Unlike *Dunn*, the indictment at issue here did not exclude either theory upon which the conviction was affirmed. *See* Pet. Mem. at Exh. 5; *Santellan v. Cockrell*, 271 F.3d 190, 197 (5th Cir. 2001) ("present case is readily distinguishable from *Dunn*," because indictment "alleged attempted kidnapping only in general terms and did not commit the State to prosecuting any one factual theory."). Moreover, as the Appeals Court found, this case was actually tried to the jury on both theories. Supp. App. at H:1. The jury was specifically instructed on both the attempted battery and threatened battery theories by the court, in contrast to *Dunn* where the jury was instructed to consider only the theory presented in the indictment, a theory that was held on appeal to be legally insufficient. 442 U.S. at 105-06 & n.4. The instant case is unlike *Dunn* in each of the key factual circumstances that case was based upon: the theory of the case that Petitioner challenges was charged in the indictment; that theory was also explicitly submitted to the jury; and the theory Petitioner contends the case was explicitly tried upon was upheld by the appellate court. The Appeals Court did not reach an opposite conclusion from *Dunn* based upon materially

11

indistinguishable facts, and its decision is not contrary to *Dunn* within the meaning of 28 U.S.C. § 2254(d)(1).

### C. The Appeals Court's Decision Was Not Based On An Unreasonable Determination Of The Facts In Light Of The Evidence Presented In The State Court Proceeding.

Petitioner also claims that the Appeals Court decision affirming the sufficiency of the evidence as to the attempted battery theory was based upon an unreasonable determination of the facts. First, as discussed above, this argument is insufficient to warrant relief, since it leaves unchallenged the Appeals Court's conclusion that there was sufficient evidence to support the verdict on a threatened battery theory. The claim also fails on its own terms. While his argument broadly disputes the Appeals Court's interpretation of Massachusetts assault law and its judgment about what conclusions could be drawn from the evidence, Petitioner's disagreement with the Appeals Court decision regarding the basic facts of the assault is actually quite narrow. At bottom, Petitioner's factual argument is that the Appeals Court unreasonably determined that when Sammy Rodriguez returned from stabbing Marco Charles to the scene where Petitioner was holding Dion Hughes at gunpoint, Rodriguez told Petitioner of the stabbing. Petitioner contends that there is no evidence of this, and that Petitioner's group left the scene after the stabbing, without Petitioner knowing of the killing. Even ignoring Petitioner's own statement that he knew of the stabbing, the dispute is of little substance. The Appeals Court did not base its decision on the fact that Petitioner knew of the stabbing at the time he fled the scene of the assault.

> The Appeals Court's analysis of the attempted battery issue was as follows:
>
> The defendant claims that there was no evidence of an attempted battery. We disagree.
>
> Attempt requires not only an intention to commit the underlying offense, but also an overt act towards its commission. The overt act required for an attempt must, after

>  all, be more than preparation and must come very near to accomplishment of the result. The jury could have found that the defendant had been instructed by one of his group to shoot Hughes and Jones in retaliation for a previous beating suffered at their hands. The defendant, who had cocked his gun, first pointed the gun at Hughes, then at Jones, then between the two of them. The victims could hear it "click back." The defendant taunted and verbally abused the two saying "you all niggers is cowards, faggots, stuff like that." This confrontation was very quickly interrupted, however, when another of his group came running up the street and told the defendant that he had stabbed someone. The defendant and his friends quickly ran away without harming Hughes or Jones.
>
>  An interrupted crime can also qualify as an attempt to commit the crime. For example, commission of an overt act intended to cause death by strangulation which comes very close to accomplishment would necessarily be an attempt to commit a battery.
>
>  We view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. An inference drawn from circumstantial evidence need only be reasonable and possible; it need not be necessary or inescapable. The defendant's friend had urged him to shoot the victims in retaliation for a previous incident. The defendant cocked his pistol and aimed it at the victims; the jury were entitled to believe that the completion of the crime was interrupted only because a group member urged immediate escape.
>
>  There was sufficient evidence for the jury to find the defendant guilty beyond a reasonable doubt of both assault by apprehension of an immediate battery and assault by attempted battery.

Supp. App. at H:3-5 (internal citations omitted).

As an initial matter, Petitioner's critique of the Appeals Court's decision proceeds from a premise of Massachusetts assault law not apparent in the decision, and not reviewable by this Court. Specifically, Petitioner contends that proof of an interrupted battery requires "proof of an overt act taken towards completion of the battery *and* proof of intervening, extrinsic factors that compel discontinuance of the crime." Pet. Mem. at 12 (emphasis supplied). The necessary elements of proof for a crime are determined with reference to state law, *Ortiz v. DuBois*, 19 F.3d 708, 717 (1st Cir. 1994), and the state court's determination of what those elements are is conclusive and binding

on this court. *Id*. at 713, n.5; *Cola*, 787 F.2d at 688, n.5. The Appeals Court held that proof of an intent to commit the battery, coupled with an overt act towards its commission sufficed to demonstrate assault. The court did not hold that the state had to prove, in addition to the overt act, that "intervening, extrinsic factors compel[led] discontinuance of the crime," and neither of the cases cited by Petitioner for this proposition support it. In *Commonwealth v. Dixon*, 614 N.E.2d 1029, 1030 (Mass. App. Ct. 1993), the court held that an attempt at murder by strangulation could, as a theoretical matter, occur even without physical touching, for instance, where an external force interrupted an imminent strangulation. The court did not hold that the prosecution must prove that such intervening, external factors compelled the failure of the crime as elements of every attempt prosecution. To the contrary, the court held only that an overt act coming very near to accomplishment of the intended result sufficed for attempt liability, precisely the standard used by the Appeals Court here. *Id*. Similarly, in *Commonwealth v. Reynolds*, 406 N.E.2d 1042, 1043 (Mass. App. Ct. 1980), the court upheld the evidentiary sufficiency of an attempted breaking and entering conviction without any discussion of whether the prosecution had proved that extrinsic forces compelled the defendant to abandon his plan to enter a pharmacy at night after he had broken its window. Rather, the court held that it sufficed that the jury could have inferred that defendant held the intent to enter at the time he committed the overt act of throwing a rock through the window. *Id*.

Petitioner's dispute with the Appeals Court about the facts of the assault has two main components. First, Petitioner argues that there was no evidence to support the Appeals Court's finding that there was "a plan" or joint enterprise to kill Dion Hughes and Shawn Jones. Pet. Mem. at 14. But this was not the Appeals Court's finding, and was not necessary to the verdict. The facts

recited by the Appeals Court, as described above, were that Tex told Petitioner to shoot Hughes and Jones, that Petitioner cocked his gun and pointed it at them, that Petitioner and Tex verbally abused the victims while he had the gun pointed at them, and that he pushed Hughes and threatened to "blast him." Petitioner does not claim that these facts are incorrect, Pet. Mem. at 14-15, but rather that any inference that Petitioner intended to shoot Hughes at the time he cocked the gun is overcome by the fact that he did not actually shoot him. Pet. Mem. at 14. Claims about what inferences are permissible from the evidence are not reviewable under § 2254(d)(2). *Trigones v. Bissonnette*, 296 F.3d 1, 6 n.4 (1st Cir. 2002); *Dolinger v. Hall*, 302 F.3d 6, 8 n.5 (1st Cir. 2002), and the Appeals Court's conclusion that the jury could have inferred an intent to batter Hughes at the time Petitioner cocked the gun and pointed it at him is not objectively unreasonable in any case.[2]

The only point at which Petitioner disagrees with the Appeals Court as to a basic, historical fact is over the question of whether Petitioner had been told that Sammy Rodriguez had stabbed Marco Charles at the time Petitioner stopped pointing his gun at Dion Hughes and Shawn Jones and fled the scene. The idea that Petitioner heard about the stabbing during his confrontation with Dion Hughes did not originate with the Appeals Court; the source of that claim was Petitioner himself.

---

[2] On a related matter, Petitioner makes the claim that cocking the gun and pointing it at Hughes cannot be considered an overt act towards battery because his threat to "blast" Hughes indicated that he only intended to shoot him if he moved. Pet. Mem. at 15. This argument is apparently based upon Petitioner's position that *Commonwealth v. White*, 110 Mass. 407 (1872), categorically precludes conditional threats from assault liability. *See* Pet. Mem. at 5-6, 15. *White* does not so hold. To the contrary, *White* upheld an assault conviction based upon defendant's unconsummated threat, while holding a gun and pointing it at the victim, that "I have got something here that will pick the eyes of you." 110 Mass. at 407. *White* held that an assault occurred regardless of whether defendant actually intended to harm the victim at the time he pointed the gun at him, so long as the defendant's conduct could reasonably have caused the victim to fear that he would be battered. *Id*. at 409. Under *White*, the facts conceded by Petitioner here seem clearly sufficient to set forth not just an overt act, but a completed assault. As the Court held: "Acts, as well as words, may constitute and prove a threat." *Id*.

Petitioner's counsel described what Petitioner told the police initially about what he was doing when he heard about the stabbing:

> Q:  Well, in the first statement, doesn't he say, "We came back outside; and my friend, Sammy, said, yo, 'Ti,' that dude is looking at me. I think I'm going to have so (sic) problems. So they approached us. Once they approached us, I'm looking at one person. The person who approaches me, his name is Dion. So all of a sudden, I heard, I got the dude. I stabbed him. I stabbed him."
>
> Isn't that what he said?
>
> A:  Yes, sir.

Tr. III:273-74; *see also* Tr. III: 275 (repeating same statement).

At trial, Petitioner confirmed that he heard Sammy Rodriguez say that he'd stabbed someone immediately before he and the others in his group fled the scene. After explaining how he showed his gun to Dion Hughes to let him know not to "walk up on him," and claiming that he had the gun out for only fifteen seconds, Tr. IV:133-35, Petitioner testified about what happened next:

> I walked down this way. "Tex" is standing there. Marco was standing there. As I was walking down, I heard Sammy said, I got dude. I stabbed someone.

Tr. IV:135. Immediately after hearing Rodriguez's voice, Petitioner says that his group started walking away from the scene, disposing of the murder weapon on the way back to their cars, and then driving to Forest Hills to get rid of Petitioner's gun. Tr. IV:140.

Petitioner avoids discussing his own testimony and instead focuses on the testimony of the victims in an attempt to show that the Appeals Court decision was unreasonable. In fact, their testimony supports the inference that Petitioner interrupted his assault of Hughes and Jones to flee

16

the scene with his compatriots. Dion Hughes testified that Petitioner was standing, pointing a gun at him and his friends the entire time that Petitioner was present at the scene:

> Q: And which way was the gun pointed the whole time?
>
> A: He had it pointed towards my friends and I at the bench. Then he didn't point it at us for – he had it pointed for a little while at us at the bench.
>
> Q: What is the next thing that happened?
>
> A: Sammy and Derrick started running towards up the street here, towards Washington Street.
>
> . . . .
>
> Q: And, in addition to [Sammy], did you see anyone else run?
>
> A: The rest of them fled.
>
> Q: Who would that have been?
>
> A: Tihisi, "Tex," Derrick, Marco
>
> Q: Now, once you say (sic) Sammy run in the way you showed, can you tell us what Tihisi Williams did at that point?
>
> A: At that point, he ran with them.

Tr. II:89-90. Shawn Jones's testimony largely agreed with Hughes's on this point, although he added that he heard "Deeda Weeda" (apparently Derrick Farris) say "let's be out, let's be out" as he returned to where Petitioner was holding the gun on Jones and Hughes, and that the group then immeditaely started running. Tr. III:167-69.[3]  In short, there was ample evidence showing that Petitioner stopped pointing the gun at Hughes and Jones only after he heard and saw other members

---

[3] Petitioner cites Shawn Jones as testifying that Petitioner terminated the assault before Deeda Weeda returned. Pet. Mem. at 13. In fact, Jones testimony appears to be that Deeda Weeda and the others returned while Petitioner was pointing the gun at him. Tr. III:164-67.

17

of his group fleeing the stabbing of Marco Charles, and immediately before he, himself, fled. There is not only evidence that Petitioner was told of the stabbing by Sammy Rodriguez during his confrontation with Hughes, the evidence came from Petitioner's own mouth. The Appeals Court's finding that Petitioner knew of the stabbing at the time he terminated the gunpoint assault of Dion Hughes was not objectively unreasonable.

More importantly, that finding was not necessary to the Appeals Court's decision. To obtain relief under § 2254(d)(2), the petitioner must show that the state court's decision was "based on" the objectively unreasonable factual determination. *See Johnson v. Norton*, 249 F.3d 20, 28 n.8 (1st Cir. 2001). The Appeals Court did not base its decision on the fact that Petitioner knew about the stabbing. Instead, the Appeals Court rested its decision on the fact that "the jury were entitled to believe that the completion of the crime was interrupted only because a group member urged immediate escape." Such an inference is fully supported by the testimony that "Deeda Weeda" said "let's be out, let's be out," a fact that Petitioner admits was warranted by the evidence. Pet. Mem. at 13-14. While there was sufficient evidence in the record for the Appeals Court to find that Petitioner knew of the stabbing of Marco Charles when he fled the scene, its decision was not based on that fact, and was actually fully supported based only upon factual findings that Petitioner does not challenge. The Appeals Court's decision was thus not based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, and the petition must, accordingly, be denied.

**IV. Petitioner Has Failed To Allege That His Custody Is In Violation Of Federal Law.**

As discussed in Part III, *supra*, Petitioner's claims are limited in scope. Specifically, Petitioner does not challenge the Appeals Court's decision affirming his conviction on a threatened

battery theory. The petition thus fails to even allege that Petitioner's custody violates federal law. As noted above, federal law is satisfied by a general verdict where any basis for conviction submitted to the jury is supported by the evidence, even if an alternate basis suffers from evidentiary insufficiency. *Griffin v. United States*, 502 U.S. 46 (1991). The unchallenged affirmance of the conviction on the threatened battery theory is an adequate state law ground supporting Petitioner's custody, which is entirely independent of any federal law claims raised in this petition. Petitioner has thus failed to satisfy the threshold requirement of 28 U.S.C. § 2254(a) by showing that his conviction is in violation of federal law. *Wainwright v. Sykes*, 433 U.S. 72, 77, 80-82 (1977). This defect would be fatal to the petition even if Petitioner had demonstrated (as he has not) that the Appeals Court's decision regarding its alternate basis for affirming the conviction failed to comport with the standard set forth in 28 U.S.C. § 2254(d). *See Aleman v. Stearns*, 320 F.3d 687, 690 (7th Cir. 2003) (it is insufficient to warrant habeas corpus relief to show just that state court decision was contrary to or an unreasonable application of federal law under § 2254(d); petitioner must also satisfy § 2254(a) and show that custody itself violates federal law). Since Petitioner fails to sufficiently allege, much less show, that his custody violates federal law, the petition should be denied.

**Conclusion**

For these reasons, respondent respectfully suggests that the petition for habeas corpus should be denied.

                                          Respectfully submitted,

                                          THOMAS F. REILLY
                                          ATTORNEY GENERAL

                                          /s/ David M. Lieber
                                          David M. Lieber (BBO# 653841)
                                          Assistant Attorney General
                                          One Ashburton Place
                                          Boston, Massachusetts  02108
                                          (617) 727-2200 ext.2827

                                          ATTORNEYS FOR RESPONDENT

Dated: June 1, 2004